UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 07-03-C**

**DAMIEN A. SUBLETT,**   **PETITIONER,**

**V.**   **MEMORANDUM OPINION AND ORDER**

**JOHN MOTLEY, WARDEN,**   **RESPONDENT.**

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the court on the petitioner's application for a writ of habeas corpus (DE 1) and his motion for summary judgment (DE 14). The court referred this matter to the Honorable James D. Moyer, Magistrate Judge for the United States District Court for the Western District of Kentucky, who issued a Report and Recommendation (DE 16). The petitioner has filed an objection to a portion of the Magistrate Judge's report. When the parties to an action submit such objections, the district court reviews the record *de novo*. 28 U.S.C. § 636(b)(1)(c). To the extent that the petitioner does not specifically object to the report and recommendation, the court concurs in the results recommended by the Magistrate Judge. *Thomas v. Arn,* 474 U.S. 140 (1985). The court, having reviewed the record *de novo* in light of the objections and being otherwise sufficiently advised, will accept the Magistrate Judge's Report and Recommendation.

**I.**   **Background**

The petitioner sought a writ of habeas corpus, 28 U.S.C. § 2254, on two

grounds: involuntary waiver of his *Miranda* rights and ineffective assistance of appellate counsel. In May 2003, the petitioner was paroled. Within a few weeks after his release, he was identified as the primary suspect in a series of robberies. His parole officer was aware of the robbery investigation, and the officer went to the petitioner's residence for the purpose of a "home visit." The petitioner was not there at the time, and the parole officer returned the next day accompanied by Louisville Metro Police Department officers. The petitioner's mother allowed the officers to enter and wait in the home. Upon his arrival at home, Sublett was placed under arrest and transported to the Louisville Metro Police robbery unit office. While at the robbery unit office, Detective Mark Hickman gave the petitioner a waiver of rights form, and the word "Refused" followed by the petitioner's initials appears in the signature line of the form. Later that day, Sublett signed a waiver of rights form, and he admitted to fifteen of twenty robberies in a statement to Detective Larry Duncan. The facts surrounding his waiver are disputed by the petitioner. The petitioner pleaded guilty to twenty-two counts of first degree robbery. In his plea agreement, the petitioner reserved the right to appeal the trial court's denial of his motion to suppress statements and evidence. The Supreme Court of Kentucky found no error and affirmed his conviction. *See Sublett v. Commonwealth,* 203 S.W.3d 701 (Ky. 2006).

**II.    Standard of Review**

Review of petitions for habeas corpus is governed by the Anti-terrorism and

Effective Death Penalty Act of 1996 ("AEDPA").  28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d).  Under the "contrary to" clause of the statute, a federal court may grant relief if the state courts in affirming the conviction arrived at a conclusion opposite to that reached by the Supreme Court on a question of federal constitutional law or the state court decided the prisoner's case differently than the Supreme Court decided the same constitutional question on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under the "unreasonable application" clause of the statute, relief is warranted if the state courts in affirming the conviction identify the correct governing principle of constitutional law from decisions of the Supreme Court but unreasonably apply that principle to the facts in the case.  *Williams*, 529 U.S. at 407-08; *Campbell v. Coyle*, 260 F.3d 531 (6th Cir. 2001).  The key question in an "unreasonable application" analysis is whether the state-court decision was objectively

3

unreasonable, not whether it was merely erroneous or incorrect.   *Williams,* 529 U.S. at 409.  Overall, the state-court judgment must be upheld unless, after the closest examination of that judgment, a federal court is firmly convinced that a federal constitutional right has been violated."  *Williams*, 529 U.S. at 388.  Further, "findings of fact made by a state court are presumed correct and can be contravened only where the habeas petitioner shows by clear and convincing evidence that the state court's factual findings were erroneous."  *Bugh v. Mitchell,* 329 F.3d 496, 500 (2003); 28 U.S.C. § 2254(e)(1).

**III.   Petitioner's Claims**

The petitioner does not object to the Magistrate Judge's recommendation regarding his claim of ineffective assistance of counsel.  Further, he does not object to the Magistrate Judge's finding that there is no basis in fact or law for the petitioner's motion for summary judgment and the Magistrate Judge's recommendation that the motion be denied. Thus, the court adopts the Magistrate Judge's Report and Recommendation as to the petitioner's claim for ineffective assistance of counsel and motion for summary judgment.  The only remaining issue is whether there was a valid *Miranda*[1] waiver.  The petitioner claims that the state court erred when it held that he voluntarily waived his *Miranda* rights.  Further, he objects to the Magistrate Judge's finding that it was reasonable for the trial judge to credit the officer's testimony over the petitioner's in determining whether the

---

[1] *Miranda v. Arizona,* 384 U.S. 463 (1966).

4

petitioner voluntarily waived his *Miranda* rights. This court must determine whether the state-court decisions concerning the petitioner's *Miranda* waiver were contrary to, or an unreasonable application of, Supreme Court precedent.[2]

In *Miranda v. Arizona*, the Supreme Court held that police officers must inform a suspect of his Fifth Amendment privilege against self-incrimination prior to interrogating a person in custody. 384 U.S. 436 (1966). Thus, prior to questioning initiated by a law enforcement officer after a person has been taken into custody, the person must be warned that he has a right to remain silent, that any statement he makes may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed. *Id.* A suspect may then waive those rights provided that the waiver is knowing, voluntary, and intelligent. *Id.* The petitioner argues that the waiver form which contains the word "Refused" and his initials on the signature line establishes that he invoked his right to remain silent and his right to counsel. Further, he argues that the word "Refused" indicates that he refused to waive his *Miranda* rights. Thus, the first issue is whether the petitioner invoked his *Miranda* rights when he "Refused" to sign the waiver form.

---

[2] While the petitioner cites cases from Federal Courts of Appeals, "[t]he federal court may not grant relief on any claim, unless the state court decision on the law controlling that claim was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. In applying this standard, decisions of lower courts may not be considered [and] only the holdings of the Supreme court, rather than its dicta, may be considered." *Bailey v. Mitchell,* 271 F.3d 652 (6th Cir. 2001).

5

When an accused expresses his desire to deal with the police only through counsel, he may not be subjected "to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication" with the police. *Edwards v. Arizona,* 451 U.S. 477, 484 (1981). To invoke the right to counsel, a suspect must make "some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *McNeil v. Wisconsin,* 501 U.S. 171, 178 (1991). "But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, [Supreme Court] precedents do not require the cessation of questioning." *Davis v. United States*, 512 U.S. 452, 459 (1994). The petitioner argues that he invoked his right to counsel and right to remain silent when he initialed the waiver form with the notation "Refused" and his initials in the signature line,[3] and that Detective Hickman should have understood the "Refused" notation as an expression to remain silent and a request for counsel. Yet, Detective Hickman, and not the petitioner, wrote "Refused" on the waiver form. *See* Suppression Hearing Transcript at 97, 105. The trial court accepted "Detective

---

[3] The notation "Refused" was under a paragraph which read "I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me." DE 1-3.

6

Hickman's testimony that the word 'Refused' should be interpreted to mean only that [the petitioner] refused to sign a written waiver." *Sublett v. Commonwealth*, 203 S.W.3d 701, 708 (Ky. 2006); *see also* Suppression Hearing Transcript at 26-27. (Detective Hickman testified that the "refusal" notation means the petitioner "refuse[d] to sign the waiver" but the petitioner agreed to speak with the detective.) Federal courts on habeas review do not have license to re-determine witness credibility. *See Marshall v. Lonberger,* 459 U.S. 422, 434 (1983). Additionally, the petitioner's initials next to the word "Refused" does not "unambiguously request counsel" or invoke the right to remain silent. *Davis,* 512 U.S. at 459 (where suspect only said "maybe I should talk to a lawyer," he did not unambiguously request counsel; suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers stop questioning the suspect."); *see United States v. Hurst,* 228 F.3d 751 (6t Cir. 2000) (applying *Davis* standard to invocation of right to remain silent).

*North Carolina v. Butler* demonstrates that a suspect may refuse to sign a waiver but nonetheless indicate that he is willing to talk with the police. 441 U.S. 369 (1979). In *Butler,* the suspect refused to a sign a waiver on an "Advice of Rights" form, yet he stated he would talk to the agents and did not request counsel or attempt to terminate the agent's questioning. *Id.* at 371. The Supreme Court held that the question of whether a person waived his *Miranda* rights is whether the

suspect in fact knowingly and voluntarily waived his rights. *Id.* at 373. Further, in "some cases a waiver can be clearly inferred from the actions and words of the person interrogated." *Id.* Thus, the mere notation of "Refused" at the bottom of the waiver form in this case does not end the inquiry. The court must determine whether, despite the petitioner's refusal to sign the first waiver form, he voluntarily, knowingly, and intelligently waived his *Miranda* rights. Having found the notation of "Refused" did not invoke his right to remain silent nor his right to an attorney, the court must determine whether the petitioner voluntarily waived his *Miranda* rights.

A person's waiver of *Miranda* rights must be found, based on the totality of circumstances, to be voluntary, knowing, and intelligent. The inquiry into whether a waiver was voluntary, knowing, and intelligent is twofold:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986). "The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." *Id.* at 375. On habeas review, the voluntariness of a confession presents a mixed question of law and fact. *Miller v. Fenton,* 474 U.S. 104, 117

8

(1985).

> Subsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the *Miranda* warnings, often require the resolution of conflicting testimony of police and defendant. The law is therefore clear that state-court findings on such matters are conclusive on the habeas court if fairly supported in the record and if the other circumstances in § 2254(d) are inapplicable.

*Id.* at 117. But once the factual questions surrounding the confession are resolved, the voluntariness of a confession under the totality of the circumstances is a legal question requiring independent federal determination of whether the confession was obtained in a manner consistent with the Constitution.

The petitioner admits that he signed a waiver form. Thus, under *Moran,* the petitioner had a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.[4] The signing of a waiver form presents strong evidence that the petitioner waived his *Miranda* rights. "The primary protection afforded suspects subject to custodial interrogation is the *Miranda* warnings themselves. . . . A suspect who knowingly and voluntarily waives his right to counsel after having that right explained to him has indicated his willingness to deal with the police unassisted." *Davis v. United States,* 512 U.S. 452, 460 (1994); *see also Oregon v. Elstad,* 470 U.S. 298, 308 (1985) ("Once

---

[4] Detective Duncan also testified that he discussed the rights waiver form with the petitioner, reviewed each of the rights in the form, and then asked if the petitioner understood each of those rights and, if so, whether he was willing to waive such rights. Suppression Hearing Transcript at 55. Detective Duncan also advised "Rick" and "Carlos," the petitioner's other personalities, of their rights, and the petitioner waived his rights under those personas as well. *Id.* at 56.

9

warned, the suspect is free to exercise his own volition in deciding whether to make a statement to authorities."). This court finds that the petitioner was adequately and effectively apprised of his rights.

But *Moran* also requires that the waiver be the "product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran,* 475 U.S. at 421. The petitioner contends that after writing "Refused" on the first waiver form, he requested an attorney numerous times and continued to refuse to speak for an hour and a half to two hours while at the robbery unit. DE 1 at 4-5*.* Thus, the petitioner argues, he signed a waiver form only after concluding the interrogators would not honor the *Miranda* rights he previously invoked. Yet, the trial court did not find the petitioner's testimony credible and, instead, accepted the testimony of several police officers that the petitioner did not invoke his rights prior to making statements. The trial court explained its reasoning as to why it found the officer's version of events more credible as follows:

> Accepting Defendant's version of the four and one-half hours that transpired between his 9:30 arrest at his mother's home and his signature on the Waiver of Rights form would require the conclusion that every single police officer who came in contact with Defendant prior to 2:00 p.m. on August 28 ... Ignored [sic] Defendant's repeated requests to remain silent and to have an attorney. In addition, if Defendant's version were accurate, all of the aforementioned officers who testified lied to the Court while under oath. Moreover, Defendant has admitted to this Court that he lied to Detective Duncan about the presence of his multiple personalities or alter-egos, Rick and Carlos, allegedly because he was being forced to talk and was "acting silly." Accepting Defendant's version of the events also entails concluding that several officers repeatedly denied Defendant's requests for an attorney and invocation of his right to remain silent but then, inexplicably, Detective Colebank honored that right and ceased all

> questioning about two robberies for which no confession had been made. Although Defendant appears to have been at the Robbery Unit Office for approximately three to four hours before the Rights Waiver form was signed, Defendant's description of events during those hours simply is not credible.

*Sublett v. Commonwealth,* 203 S.W.3d 701 (Ky. 2006).

Under the AEDPA, courts presume that factual findings made by the state court are correct, unless the petitioner produces clear and convincing evidence to rebut that presumption. 28 USC 2254(e)(1). And when assessing witness credibility, the court conducts an even more deferential review, as federal courts on habeas review do not have "license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court." *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983). In this case, there is no clear and convincing evidence to reject the trial court's credibility finding regarding its rejection of the petitioner's version of events. This court adopts the Magistrate Judge's finding that "it was reasonable for the trial judge to credit the officer's testimony over that of the petitioner." DE 16 at 5.

By adopting that finding, this court finds that the petitioner's confession was voluntary under *Moran.* "Full comprehension of the rights to remain silent and request an attorney is sufficient to dispel whatever coercion is inherent in the interrogation process." *Davis v. United States,* 512 U.S. 452, 460 (1994). The petitioner has not presented evidence that the police resorted to threatening or coercive tactics to elicit his statements. Nor has he presented evidence that he did not fully understand the consequences of his waiver of *Miranda* rights. The court

finds, based upon the totality of the circumstances in this case, including that the petitioner signed a *Miranda* waiver form, that it was objectively reasonable for the Kentucky state courts to hold that the petitioner voluntarily waived his *Miranda* rights and that his statements were voluntarily made. The state courts' findings were not contrary to or an unreasonable application of clearly established Supreme Court precedent.

### IV. Certificate of Appealability

A Certificate of Appealability may be issued where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Such a substantial showing is made when it is evident that "reasonable jurists could debate whether … the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The court adopts the Magistrate Judge's recommendation that reasonable jurists would not find debatable or wrong the correctness of the assessments made in this case; therefore, the court declines to issue a certificate of appealability.

### V. Conclusion

Accordingly,

**IT IS ORDERED** that the Magistrate Judge's Report and Recommendation (DE 16) is **ADOPTED** as this court's opinion with the addition of the analysis set forth above.

**IT IS FURTHER ORDERED** that the petitioner's motion for summary judgment (DE 14) is **DENIED.**

**IT IS FURTHER ORDERED** petitioner's application for a writ of habeas corpus (DE 1) is **DENIED AND DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED,** as the petitioner has failed to make a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(1).

Signed on  August 20, 2008

*Jennifer B. Coffman*
**Jennifer B. Coffman, Judge**
**United States District Court**